**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Ohio Conference of Plasterers and Cement Masons Combined Funds, Inc., | : | Case No. 3:08-CV-00486 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| | **:** | |
| Meridieth Construction, Inc., et al., | : | |
| Defendants. | | |

The parties have previously consented to have the undersigned Magistrate conduct any and all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. Pending is Plaintiff's Motion to Enforce Default Provision of Settlement Agreement (Docket No. 16) and Defendants' Response. For the reasons that follow, the Magistrate grants Plaintiff's Motion to Enforce Default Provision of Settlement Agreement.

## **THE PARTIES**

Plaintiff is a collection and disbursement agency for employee benefit plans. In that capacity, Plaintiff collects fringe benefit contributions from covered employers and in return, Plaintiff provides insurance coverage and pension benefits to covered employees (Docket No. 1 at ¶ 1).

Defendant Lonnie Meridieth III, is the primary owner and President of Meridieth Construction

Incorporated (Meridieth Construction) (Docket No. 1 at ¶ 4).

Defendant Meridieth Construction, an employer as defined in 29 U.S.C. § 152(2), is organized under the laws of the State of Ohio, and has its principal place of business in Toledo, Ohio (Docket No. 1 at ¶ 3).

## BACKGROUND

### A. INITIAL DISPUTE

Defendant Meridieth Construction, acting by and through Defendant Lonnie Meridieth, entered into a collective bargaining agreement (CBA) with Plaintiff effective July 1, 2004 through June 30, 2008 (Docket No. 1 at ¶ 5 and Exhibit A). Defendant Merideith Corporation employed workers who were covered under the CBA (Docket No. 1 at ¶ 6).

Under the terms of the CBA and declarations of trust, Defendant Merideith Corporation was required to make, submit and pay fringe benefit payments to the Plaintiff not later than the $15_{th}$ day of the month following the month during which the work was performed (Docket No. 1, at ¶ 7). Section 502(g) of Employee Retirement Income Security Act (ERISA) of 1974 and the terms of the CBA provided for payment of liquidated damages in the amount of ten percent of the total amount of unpaid and delinquent contributions with interest at the rate of one and one half percent per month (Docket No. 1, at ¶ 7). Defendants failed to submit fringe benefit payments for the months of September through December 2007. The delinquent payments, exclusive of liquidated damages and interest, totaled sixty-nine thousand eight hundred eighty-five dollars and thirty seven-cents ($69,885.37) (Docket No. 1, at ¶¶ 9, 10).

### B. DISMISSAL OF CASE & PARTIES' SETTLEMENT AGREEMENT

Plaintiff filed its original complaint on February 27, 2008, pursuant to 29 U.S.C. §§ 185 and §

1132(a)(3), (e), and (f) (Docket No. 1). On May 15, 2008, the parties submitted a stipulated settlement agreement for approval by the Court (Docket No. 14). On May 19, 2008, the Court adopted the parties' settlement agreement and ordered the case dismissed without prejudice.

Pursuant to the settlement agreement, Defendant Meridieth Construction agreed to pay Plaintiff the sum of seventy-six thousand six hundred one dollars and ninety-four cents ($76,601.94) in monthly installments beginning June 1, 2008 and ending on November 1, 2009 (Docket No. 16, Exhibit A at ¶ ¶ 1 and 2(a)). This total included $69,94.27 in delinquent contributions for the period of September through December 2007; $373.40 in court cots; $1,700 in attorney fees and $4,643.17 in interest. Defendant Meridieth Construction also agreed (1) to immediately submit to a payroll audit, if requested by the Plaintiff, to be conducted by the Plaintiff's Administrative Manager, or its designee, in order to determine the precise amount of any delinquent contributions or liquidated damages due Plaintiff for any contributions due and owning after December 31, 2007, (2) in the event of failure to timely submit future fringe benefit contributions, all amounts required to be paid pursuant to Paragraph 2 of the Agreement would become immediately due and payable and Plaintiff could immediately recover from Meridieth Construction, and/or Lonnie Meridieth, individually, all of the amounts owed by Meridieth Construction as referenced in Paragraph One (1) of the Agreement, and interest, costs and attorney fees, (3) Plaintiff, as it deemed appropriate, could **immediately** foreclose upon the Cognovit Promissory Note executed by Meridieth Construction, and upon Lonnie Meridieth, individually, (4) Plaintiff would, at such time, be entitled to **immediately** recover and collect from Meridieth Construction and/or Lonnie Meridieth $6,988.54 as liquidated damages on the delinquent contributions for the work months of September through December 2007, and (5) Plaintiff could collect interest at six percent per annum, as well as costs and attorney fees should Defendants breach any aspect of the Agreement (Docket No. 16,

Exhibit A at ¶ 8). This Court retained jurisdiction to enforce the parties' Settlement Agreement (Docket No. 15).

### C. POST-SETTLEMENT ACTIVITIES

On October 10, 2008, Plaintiff filed the present motion requesting the Court to exercise its retained jurisdiction to enforce the default provision of the settlement agreement. Plaintiff alleges that Defendants have failed to submit the fringe benefit contributions for all work during the months from April through August, 2008, thus defaulting and breaching the Settlement Agreement (Docket No. 16).

Plaintiff requests that the Court order Defendants to immediately submit to an audit for the period of April 1 through August 2008. Plaintiff moves the Court to order Defendants to immediately pay to Plaintiff, the fringe benefit contribution amounts which the audit reveals are delinquent. Plaintiff also requests that Defendants pay: 1) interest on the contributions owed at six percent (6%) per annum, 2) Plaintiff's costs and attorney fees, and 3) six thousand nine hundred eighty-eight dollars and fifty-four cents ($6,988.54) in liquidated damages (Docket No. 16).

Plaintiff has filed a complaint in Lucas County, Ohio, Common Pleas Court to execute on the Cognovit Promissory Note, thereby collecting the remaining balance on the original principal owed of seventy-six thousand six hundred one dollars and ninety-four cents ($76,601.94) (Docket No. 16, n. 1).

Defendants, in their response, agree that they entered into a Settlement Agreement, and that the Settlement Agreement is binding upon the Defendants. Further, Defendants agree that "certain payments required under the Settlement Agreement are delinquent." However, Defendants object to any Court order regarding specified amounts due, until a payroll audit is conducted "to determine the precise amount of any delinquent contributions or liquidated damages" (Docket No. 19).

**DISCUSSION**

A. **JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT**

Federal district courts are courts of limited jurisdiction; they "do not possess the inherent power to vindicate their own authority where parties enter into a voluntary agreement resolving their federal lawsuit." *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001) *cert. denied,* 122 S. Ct. 1539 (2002) (*citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 114 S.Ct. 1673, 1675 (1994)). The enforcement of a settlement agreement is not a continuation or renewal of the dismissed suit, therefore it requires its own basis for jurisdiction. *Id*. (*citing Kokkonen,* 114 S.Ct. at 1675-76). Nonetheless, a district court has "the authority to dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement." *Id*. (*citing Futernick v. Sumpter Twp.*, 207 F.3d 305, 310 (6th Cir. 2000)). Ancillary jurisdiction to enforce a settlement agreement exists "`if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal-either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" *Id*. at 641-42 (*quoting Kokkonen*, 114 S.Ct. at 1677).

In the present case, it is clear that the initial order of dismissal contained a separate provision allowing the Court to retain jurisdiction over the settlement agreement. The initial order of dismissal reads, "The Parties further stipulate that the Court shall retain jurisdiction to enforce the Parties' Settlement Agreement and shall exercise such jurisdiction upon a Party's motion that it do so (Docket No. 15)." The language used in the order of dismissal is clear and unequivocal. The intent of the parties and of the Court was to retain jurisdiction over the enforcement of the settlement agreement. Defendants in their response brief state: "Defendants do not object to this Court exercising its

jurisdiction as a result of Plaintiff's motion (Docket No. 19)." Plaintiff has properly filed a motion moving the Court to exercise its retained jurisdiction to enforce the settlement agreement. The Court is authorized to grant such motion.

### B. VALIDITY OF SETTLEMENT AGREEMENT

A district court may only enforce a settlement agreement if it is clear that an agreement has been reached on all material terms. *Id.* at 645-46 (*citing Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). Where facts material to the settlement are disputed, an evidentiary hearing is required. *Id.* at 646 (*citing Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) *cert. denied*, 97 S. Ct. 165 (1976)). Where the settlement agreement is clear and unambiguous, and no issue of fact exists, an evidentiary hearing is not required. *Id.* (*citing Aro Corp.*, 531 F.2d at 1372). "Thus, summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement. *Id.* (*citing Kukla*, 483 F.2d at 621).

In the present case, it is clear that an agreement has been reached on all material terms. The settlement agreement was reduced to writing and signed by both parties. Defendants agree that they entered into the settlement agreement, and that the agreement is binding upon them. The agreement is thorough, clear, and unambiguous.

No material facts to the agreement are disputed by the parties. Defendants ask that an accounting, as set forth in the settlement agreement, be conducted before the Court orders payment of a specified total of delinquent contributions. This is precisely what the settlement agreement calls for, and what the Plaintiff demands in their prayer for relief. The parties are in agreement that an accounting should be conducted to determine the precise contributions that are delinquent. There exists no issues

that contradict or undermine the terms of the settlement agreement, therefore an evidentiary hearing is not required.

The Court finds that it is proper to enforce the default provision of the settlement agreement. No substantial dispute exists regarding the terms of the agreement. It is ordered, therefore, that Defendants submit to an audit, pursuant to the terms of the settlement agreement, for work performed during the months April through August 2008. The Court further orders that Defendants immediately pay all fringe benefit contributions shown by the audit to be owed for the months April through August 2008. It is also ordered that Defendants pay interest on the amount owed at six percent (6%) per annum. Finally, Defendants are to pay the costs and attorney fees incurred by Plaintiff, and six thousand nine hundred eighty-eight dollars and fifty-four cents ($6,988.54) in liquidated damages as set forth in the settlement agreement.

## CONCLUSION

For the foregoing reasons, it is ordered that the Motion to Enforce Default Provision of the Settlement Agreement be Granted.

**IT IS SO ORDERED**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: August 17, 2009